KEY v. JONES. (No. 29.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 14, 1916. Rehearing Denied Jan. 24, 1917.)

1. PAYMENT ☞59—PLEADING AND PROOF.

In a suit to foreclose a vendor's lien note, where the plaintiff's own testimony was not conclusive that the note had not been paid, the defendant was entitled, without having pleaded payment, to show that he had fully paid the note.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 143½; Dec. Dig. ☞59.]

2. VENDOR AND PURCHASER ☞257—VENDOR'S LIEN—RESERVATION IN NOTE—"EXECUTORY CONTRACT."

Where a deed contained covenants of warranty of title and recited the execution of notes for the purchase money and that such notes were to be liens upon the land conveyed, such deed, with the notes, constitute an "executory contract" to sell the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 654; Dec. Dig. ☞257.

For other definitions, see Words and Phrases, First and Second Series, Executory Contract.]

3. PAYMENT ☞73(1) — EVIDENCE — SUFFICIENCY.

In a suit to foreclose a vendor's lien note, evidence held to show that the debt had been paid.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 220, 224, 235, 237, 238; Dec. Dig. ☞73(1).]

4. VENDOR AND PURCHASER ☞100—EXECUTORY CONTRACT—RESCISSION.

Although notes for the purchase price of land, together with a conveyance, reciting that such notes were to be vendor's liens upon the land conveyed, constituted an executory contract to sell the land, where it appeared that the debt has been paid and the notes are barred by the statute of limitation, the vendor should not be allowed to rescind the contract and recover the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 170; Dec. Dig. ☞100.]

5. LIMITATION OF ACTIONS ☞6(9)—VENDOR'S LIEN NOTES—ACTION.

Acts 33d Leg. (1st Called Sess.) c. 27 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), provide that the owner of vendor's lien notes reserved in a deed executed prior to July 4, 1905, and not more than 4 years past due when the act took effect, shall have 12 months to obtain an extension or bring suit to enforce the lien if the notes are valid obligations when the act takes effect, and that the owner, having a superior title to land retained in any deed of conveyance, shall have 12 months after the act takes effect to bring suit for the land if the claim is not otherwise invalid. Held, that vendor lien notes, executed December 10, 1883, were barred by the statutes of 4 and of 10 years' limitation, and, not being valid obligations when

chapter 27 took effect, the holder could not toll the statute of limitations by filing a suit to foreclose his lien within 12 months.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 25; Dec. Dig. ☞6(9).]

6. CONSTITUTIONAL LAW ☞107 — VESTED RIGHTS—LIMITATION OF ACTIONS—CONSTITUTIONALITY.

A statute, undertaking to stipulate the time within which a suit to recover land should be barred when the superior title remains in the vendor, is constitutional, and not violative of vested rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 246–251; Dec. Dig. ☞107.]

Error from District Court, Liberty County; J. Llewllyn, Judge.

Suit by P. R. Key against Henry Jones. Judgment for defendant, and plaintiff brings error. Affirmed.

Stevens & Stevens, of Houston, for plaintiff in error. E. B. Pickett, Jr., of Liberty, for defendant in error.

BROOKE, J. This suit was instituted in the district court of Liberty county by P. R. Key against Henry Jones, on December 11, 1913, to foreclose a vendor's lien note, being in the sum of $163.04. The vendor's lien note was dated December 10, 1883. On May 20, 1914, defendant filed his answer, pleading the statutes of 4 and 10 years' limitation against plaintiff's claim. On November 18, 1914, plaintiff filed his first amended original petition, the amendment containing the following allegations with respect to the note and lien, to wit:

"That heretofore, to wit, on or about the 10th day of December, 1883, defendant made, executed, and delivered to plaintiff his certain promissory note for the sum of eighty-three (83) * * * bearing date of the year and date aforesaid, and due in three (3) years after date and payable to the order of plaintiff, and bearing interest at the rate of 10 per cent. per annum from date until paid. Whereby defendant became bound and liable to pay, and promised to pay, plaintiff the sum of money in said note specified, together with all interest due thereon according to the tenor and effect thereof. That said note was given for a part of the purchase money of the following described real estate and premises situated in the county of Liberty and state of Texas, to wit: [Here follows description of land]."

The amended petition then proceeded as follows:

"That said property was heretofore, to wit on the 10th day of December, A. D. 1883, conveyed by plaintiff to defendant by his deed of writing of that date in consideration, among other things, of the note herein described, and that in said deed of conveyance a lien was reserved thereon to secure the payment of said note; a copy of said deed is hereto attached, marked 'Exhibit A' and made a part hereof. That said note is due and unpaid, and defendant, though often requested, has failed and refused to pay said note, except the following amounts, and upon the dates stated, to wit: The sum of $61.95 on the 10th day of March, 1891, the sum of $40 on the 28th day of February, 1893, the sum of $30 on the 27th day of October, 1900. That there is now a balance due of $163.04 upon said note. The defendant by his answer filed in this cause having pleaded the statute of four and ten years' limitation to the aforesaid note, the plaintiff, complaining of said defendant, represents to the court that on or about the 1st day of January, 1913, he was lawfully seised and possessed of the land and premises above described, and that on the date above described was assuming and claiming the same in fee simple, and that on the date and year last aforesaid, defendant unlawfully entered upon said premises and ejected plaintiff therefrom, and unlawfully withholds from him possession thereof to his damage in the sum of one hundred and sixty-three ($163.00) dollars. Wherefore plaintiff prays judgment of the court that he have judgment for the title and possession of said above-described land and premises, and that a writ of restitution issue, and for his damage and costs of suit, and for such other and further relief, both special and general, in law and equity, that he may be justly entitled to."

The original petition prayed for both special and general relief, in law and in equity. On November 18, 1914, defendant filed a supplemental answer in response to plaintiff's first amended original petition, in which he set up that the suit had not been brought within 12 months from the date on which the act of April 3, 1913 (Acts 33d Leg. c. 123 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695]), took effect, and that the same is now barred by limitation as provided by the terms of articles 5694, and 5695, of said act. Defendant further pleaded not guilty, and the statutes of 5 and 10 years' limitation, and also in said supplemental answer set up a cross-action against the plaintiff to recover the land. The court in its judgment found that plaintiff's cause of action was barred by the statute of limitation, and accordingly rendered judgment for the defendant.

Plaintiff in error groups his first, second, third, and fourth assignments of error in which complaint is made:

"(a) Because the court erred in holding that the plaintiff's cause of action was barred by the statutes of 4 and of 10 years' limitation.

"(b) The evidence having shown that the land in controversy was conveyed by the plaintiff to the defendant on the 10th day of December, 1883, and that the defendant executed to the plaintiff his promissory note in the sum of $83, bearing interest at the rate of 10 per cent. per annum from date until paid, and that an express lien was retained in said conveyance to secure the payment of said purchase-money note (said note being for the purchase money of said land), and, the evidence having further shown that said note is due, and that at the date of said judgment there was an unpaid balance of principal and interest on said note of $163.04, and it having been shown to the court that this cause was filed, seeking a foreclosure of said vendor's lien on the 11th day of December, 1913, and the defendant having filed his plea of limitation, the plaintiff, on the 18th day of November, 1914, after said plea of limitations were filed, filed his first amended original petition, wherein he, in the alternative, asked for a rescission of said sale, and prayed for the recovery of said land; hence the court erred in rendering judgment for the defendant.

"(c) The plaintiff under his pleadings was entitled to general relief, and since under the act of the Legislature approved April 3, 1913, by

the terms of said amended act (articles 5693, 5694, and 5695, Revised Statutes), neither plaintiff's right to foreclosure of the vendor's lien nor his right to recover said land is barred by limitation, the court erred in not either foreclosing said lien or rendering judgment in favor of the plaintiff for the recovery of said land.

"(d) Under Acts 33d Leg. 1st Called Session, p. 39, the plaintiff had until November 19, 1914, to sue and foreclose his lien or to sue to recover the land, and, the amended petition of the plaintiff having been filed November 18, 1914, in which he seeks to recover under his superior title, hence the court erred in not rendering judgment for the plaintiff for the land in controversy."

The propositions advanced under these assignments are:

"(a) Under articles 5694 and 5695 of the Revised Civil Statutes of the state of Texas, as amended by the Acts of the Legislature of 1913, the holder of a note secured by an express vendor's lien executed prior to July 14, 1905, can toll the statute of limitation provided for in said articles by filing a suit to foreclose his lien within 12 months after said amended acts took effect.

"(b) Where a purchaser buys land on a credit and executes his promissory notes therefor and receives from the vendor a deed containing covenants of warranty as to title and reciting the execution of the notes for the purchase money, and that such notes are to be vendor's liens upon the land conveyed, the title to the land is prevented from passing, and such deed, together with said notes, are construed as one instrument evidencing an executory contract to sell the land.

"(c) Under article 5695, Revised Statutes, as amended by the act of 1913, the owner of a vendor's lien note secured by an express lien in the deed of conveyance, which was executed prior to July 14, 1905, could bring suit within one year to foreclose his lien without reference to rescinding the title and recovering the land, since such notes were valid obligations when said act took effect.

"(d) An election of remedies is not made by the vendor filing suit and seeking a foreclosure of his lien, since there is no election of remedies where the rights to be enforced are entirely consistent, and the vendor can, accordingly in the alternative, ask for a rescission of the sale."

In the case of Huffman v. Mulkey, 78 Tex. 560, 14 S. W. 1030, 22 Am. St. Rep. 71, the following language is used:

"The right of a vendor, who has conveyed land through a deed on its face reserving a lien for purchase money to rescind, is not an absolute right, even in cases in which the purchase money has become due and remains unpaid, as may be seen by an examination of the many cases decided by this court. The right of the vendor to rescind in such cases does not exist at all until the vendee has failed to pay purchase money in accordance with the contract, and one to whom a vendee has conveyed is entitled to all the rights of his vendor, which cannot be affected by any transaction between the original vendor and his vendee after the latter has parted with his interest in the land. The evidence does not show when the transaction between Evans and Parman occurred, which it is claimed operated as a rescission of the contract between them, and is consistent with the fact that this may have occurred after Parman had conveyed to Evans and Huffman. The evidence further fails to show when the notes executed by Parman matured, and under this state of facts in this action we think the charge was misleading, in that the jury must have understood from it that Huffman could not recover unless he showed that the purchase money had been paid or that the conveyance to Evans and himself was made with the consent of the former. If he bought without consent of Evans, and before Evans had right to rescind, or had in some lawful manner actually rescinded, no agreement subsequently made between Parman and Evans could defeat any right acquired by him through the deed from Parman to Evans and himself; and, before Evans could hold the land by any superior right as a vendor, it would be incumbent on him to show a right to rescind, which, in such a case, could not be proved unless it was shown that the purchase money was due and unpaid. In Kennedy v. Embry, 72 Tex. 389, 10 S. W. 88, it was held that a vendor of land, who had executed a deed to the purchaser and taken a mortgage to secure the purchase money might sell to another and pass title to the land after all the purchase money became due and remained unpaid. In that case no part of the contract had been performed by the purchaser; he had never been in possession, all the purchase money was past due and unpaid, and the purchaser had abandoned the state. A similar ruling was made in Thompson v. Westbrook, 56 Tex. 265. In these cases the facts existed which entitled the vendors to rescind, but the cases push the application of the rules growing out of the holding that such contracts are executory in character to the utmost verge of propriety or reason; and the writer doubts the correctness of the holding, even in such cases, that rescission can, in any case in which a deed has passed, be made otherwise than by a writing, or some decree of a proper tribunal, if for no other reason, because it makes title to land to rest largely in parol, when the purpose of the statutes of fraud was to require such right to be evidenced in a different manner. In Dial v. Crain, 10 Tex. 453, a parol rescission of an executory contract to convey land was set up, and in disposing of the case it was said: 'This was a good and valid contract under the statute of frauds, and was proof that the land was sold by Vaughan to Crain. If so, then, Crain being the owner of the land, any contract for rescission would be as much obnoxious to the provisions of the statute of frauds, and would require the same evidence under the statute to set it up as was required for the sale between Vaughan and Crain.' * * * However this may be, all the cases deny to the vendor the right to rescind so long as the vendee is not in default. In Burgess v. Millican, 50 Tex. 401, quoting from Dunlap v. Wright, 11 Tex. 597 [62 Am. Dec. 506], it was said: 'When a mortgage for the payment of the purchase money for land is executed simultaneously with the deed by which it is conveyed, the vendor has, until the purchase money is paid or the mortgage foreclosed, the superior right, and if the vendor go into possession after the vendee has made default, he cannot be turned out by process of ejectment or trespass to try title, notwithstanding the claim for the purchase money may be barred by the general law of limitations. * * * The effect of the principles in these cases is that the vendor's deed may be absolute, yet, if a mortgage for the purchase money be given back at the same time, the fee will absolutely remain in the vendor. The sale will be conditional, the ultimate right to the fee depending on the performance or nonperformance of the conditions. If the purchase money be paid, if the mortgage be satisfied, the seizure will be regarded as having been in the vendee ab initio, or from the date of purchase. If not paid the vendor will in the language of Stow v. Tifft, 15 Johns. [N. Y.] 458 [8 Am. Dec. 266], be 'reseised free of the mortgage.' Under this the right to rescind does not exist until the vendee is in default, and to prove the fact giving this right rests on the vendor in a contest with a third person."

In the still earlier case of Milligan v. Ewing, 64 Tex. 260, the court used the following language:

"It is claimed that the court erred in refusing to render judgment for the land. We are of the opinion that the court did not err in this respect. It is ordinarily true that a vendor who has made an executory contract to convey land may rescind the contract if the vendee fails to pay the purchase money. This right, however, does not exist in all cases; for if there be facts which make it inequitable for the vendor to exercise this right, a court of equity will not enforce it, but will leave the party to his action for the purchase money. * * * In this case one of the parties is dead, and the mouth of the other is closed, whereby it cannot be known whether, as claimed by the defendant, the payment of the $250 contemplated as cash payment was made. The judge who tried the case was evidently in great doubt upon this subject, and might consistently with the evidence have found that it had been. The appellee has assumed the payment of the debt due to Zimmerman, as a part of the consideration for the land, thus giving to a third person the right to call upon and to compel him to pay it—an obligation which, as between the estate represented by appellant and the appellee, it would be inequitable to enforce if the consideration which gave rise to that obligation be withdrawn, while at the same time the legal obligation to Zimmerman continued. The two notes which were executed were negotiable; neither of them was produced on the trial, nor was it shown that they had not been so transferred to a third person as to make him an innocent holder, and to cut off equitable defenses. These notes should have been tendered for cancellation if rescission was desired, or it should have been shown that they were not in the hands of an innocent holder."

In the case of Moore v. Giesecke, 76 Tex. 549, 13 S. W. 290, the court, in reviewing a number of cases, and especially the case of Tom v. Wollhoefer, 61 Tex. 281, used the following language:

" 'The vendor's remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance of purchase money. *He must not delay too long in insisting upon the payment of the money as it falls due, or he will be considered as having waived the default.* He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance.' In the case of Hamblen v. Folts, 70 Tex. 134, 7 S. W. 834, it is said: 'It is true that where the vendee is willing to perform the contract, and the vendor has received a part of the consideration, or has delayed for an unreasonable time to ask for a rescission, so that the vendee would have the right to conclude that strict performance on his part would not be insisted upon, and under that apprehension has made valuable improvements on the land, or when, for any reason it would be inequitable for the vendor to recover possession of the land, a court of equity will not permit him to do so. And the question at last in every case must be, is a rescission inequitable under the rules laid down by the courts, or has the vendee forfeited all right to perform the contract and obtain the land?' In the case of McCarty v. Moorer, 50 Tex. 287, Chief Justice Moore, said: 'The appellees unquestionably held the superior title to the land sued for, after appellant's failure to comply with the terms of the contract for its purchase. But it does not follow that they were entitled to dispossess appellant without regard to the equities which appellant was entitled to by reason of his partial performance of the contract and valuable improvements placed on the land. 'The failure on the part of appellant to comply with the con-

tract warranted appellee's demanding the land, but it is equally clear that the court may deny the possession of it until they satisfy all the equities growing out of the contract in favor of appellant. * * * We understand every decision on the subject to recognize the right of the vendee to assert his equities whenever the suit of the vendor is for a rescission of the contract. On the other hand, we do not understand that it was intended to decide, in the cases where the vendor brought suit simply to try the title, and for possession, that equities in favor of the vendee of a nature entitling him to relief would not be heard. We think rather, that in these cases it was intended to decide that the facts pleaded by the vendee did not show a case entitling the party to affirmative equitable relief. *We can see no good reason why the right of the vendee to equitable relief when he is sued for the purchase money or for the land itself should at all depend upon the character or the form of the plaintiff's suit. Whether or not he is entitled to any equitable relief will be a proper subject of inquiry in every case. When the circumstances of the transaction show him to deserve it, it should be administered; and when they do not, it should be denied.* The rule has been repeatedly and distinctly asserted, and is left by this decision in unimpaired force, that where the vendor has done nothing to waive that right he may, in every case of an executory sale of land where the vendee makes default in paying the purchase money, maintain a suit for the recovery back of the land. We can see no good reason why in every case in which the vendor sues to recover back the land contracted to be sold the original vendee, or any purchaser under him, may not only show, if the facts warrant it, that a recovery or rescission should not be allowed, and if that remedy is maintainable, also the existence of any facts entitling him in equity to have compensation for permanent and valuable improvements and to be compensated for partial payments previously made. We repeat what has already been said when we say that, when the vendee's suit is predicated upon the mere refusal of the vendee to pay the whole consideration contracted for, the facts that the vendee has paid part of the consideration and made permanent and valuable improvements, coupled with possession of the property, unaided by some other sufficient equity, will not entitle him to recover for such purchase money or improvements. In such cases, when the vendor has neither waived his legal rights, nor committed any default, he cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a price for recovering it back. *The remedy by rescission is not favored, and, as has been said, slight circumstances, when they may be properly treated as indicative of a purpose upon the part of the vendor not to insist on that remedy, may be treated as a waiver of the right to rescind, unless its maintenance becomes necessary to enable the vendor to enforce the payment of the consideration for which he contracted to sell the land; and when a suit for the recovery back of the land has been brought, where any portion of the purchase money has been paid, or where valuable and permanent improvements have been placed upon the land by the vendee or by purchasers under him and the defendant when sued, brings into court and offers to pay the balance of the purchase money with costs of suit, unless there exist strong countervailing equities, the money ought to be received and a recovery of the land denied."* (Italics ours.)

This suit was brought 30 years and 1 day after appellant made and delivered the deed to appellee, and the latter gave the appellant his note in part payment for the land now sued on. The original amount of the note was $85, and the interest rate was 10

per cent. from date. On the back of the note was written these indorsements:

"Received on the within note March 10, 1891, the sum of sixty-one & 95/100 ($61.95) dollars. Received on this note, Feby 28th, 1893, forty (40) dollars. Received on the within note October 27, 1900, the sum of thirty (30) dollars."

And also these indorsements:

"I acknowledge the within note to be a just and valid claim against me and hereby promise to pay the same according to its legal tenor and effect, this September 15th, 1896.

　　　　　　　　　　　　his
"Henry　X　Jones.
　　　　　　　　　mark
"Witness:
　"W. F. Hardin."

"I acknowledge the within note to be a just and valid claim against me and hereby promise to pay the same according to its legal tenor and effect this 10th day of December, A. D. 1890.

　　　　　　　　　　　　his
"Henry　X　Jones.
　　　　　　　　　mark
"Witness:
　"W. F. Hardin."

"Notes of J. Jones belonging to P. R. Key, left with W. F. Hardin for collection."

The note is dated December 10, 1883, and payable to P. R. Key or order 3 years after date. Appellee also executed three other notes at the same time that he gave this one to P. R. Key, as consideration for the land purchased, said three notes being as follows: One for $100, due January 1, 1884; one for $85, due 1 year after date; and one for $83 due 2 years after date.

Appellant is the payee named in said notes, and he testified that he is the owner and holder of the note sued upon. He testified also:

"I don't know the exact amounts paid on this note, as payments have always been made to my agent, and I do not know of my own knowledge whether all of the payments have been credited on the note or not—my agent has had charge of the note—but I believe it to be correct. I have not allowed any credits personally; my agents have done that. I believe all the credits have been allowed by my agent. I don't know what has become of the three notes mentioned, that is, one for $100, due January 1, 1884, one for $84, due 1 year after date, and one for $83, due 2 years after date; don't know what become of them. I suppose Henry had paid the three notes mentioned, but I have not canceled and delivered them to him. I don't know whether the notes were ever canceled or not; I did not cancel them, nor did I authorize any one to do it for me. When W. F. Hardin collected from the defendant the money paid on the note sued on herein, he was acting as my agent; he was never the owner of the note. It is true that my brother, F. H. Key, was also acting as my agent, and if he collected anything on said note, he was doing so as my agent. I also authorized L. G. Guertin to act as my agent, and to act as my agent in receiving such payments. No one outside of the ones of W. F. Hardin, F. H. Key, and L. G. Guertin had any authority to act as my agent in receiving payments on said note."

The evidence shows that W. F. Hardin is dead, but appellant offered no explanation for not calling as witnesses the said F. H. Key and L. G. Guertin, who were his agents that collected payments upon this note, and appellant says that no one except the said three agents had any authority to act as his agent in receiving payments on said note. M. K. Guertin, a witness for appellant, testified that he asked appellee about this note, but never took the note to him, and that appellee told him—

"at that time that he owed the note, and if I could wait until he gathered his crop he would pay it. He knew the note was concerning the land he was living on, and was a note he executed for a part of the purchase money. I told him that I had the note, and he said he owed it, and if I would wait until fall, he would pay it. I did that for the plaintiff, Mr. Key; he is my uncle, and lives in West Texas."

The testimony shows that appellee has been paying taxes on the land ever since he bought it from appellant in 1883, and since that time has used and occupied it as the home of himself and family, cultivating and keeping about 20 acres of the same inclosed, and appellee would have proven, except for objection by appellant, the following facts:

"That Mr. W. F. Hardin had in his possession the note sued upon, and defendant paid said Hardin the said note in full a good many years ago; that he paid off the note in full to said Hardin about the time Mr. Hardin stopped attending to any business on account of the condition of his mind; that when Mr. Merrill Guertin asked him (defendant) about the note, he did tell Mr. Guertin he would try to pay the balance Mr. Guertin claimed was due upon it, when he (defendant) gathered his crop, and told Mr. Guertin this because Mr. Guertin was a white man, and he, being a negro, thought it would be best to pay something to Mr. Guertin, and in that way avoid having any disagreement with Mr. Guertin about it."

It is admitted that W. F. Hardin died in 1907, and that for several years prior to his death, his health, bodily and mentally, was in a serious condition, and that he was totally incapacitated from giving attention to any business affairs or transactions.

Appellant's own testimony is far from conclusive that the note has not been paid. It is true that he says that he does not know the exact amount paid on the note, and does not know whether all the payments made to his agents have been allowed as credits on the note. He says that he believes the correct credits are shown. The testimony shows that personally he had nothing to do with the collection. Three credits are indorsed on the note, aggregating $131.95.

[1] We believe in this state of the case, without having pleaded payment, that the appellee was entitled to his own testimony in the case, showing that he had fully paid this note. The deed which was executed to appellee on December 10, 1883, contains this recital:

"Now, therefore, I, the said P. R. Key, for and in consideration of the above promissory notes, which aggregate in principal the sum of three hundred and fifty dollars, and which are to be vendor liens on the land hereinafter described, have granted. * * *"

[2] We are of opinion that the contract was executory, following the case of Buckley v. Runge, 136 S. W. 533, as held by Judge Reese. But while we hold that the contract was executory, it does not follow that it

would be equitable to deprive appellee of his land.

[3] As said in the case of Moore v. Brown, 46 Tex. Civ. App. 523, 103 S. W. 243, the appellee purchased this property from appellant on the 14th of February, 1896, for $560, all on credit, to be paid in three annual payments of $186.66⅔ each, as evidenced by three notes, due, respectively, on the 1st days of November, 1896, 1897, and 1898. This suit was filed on the 8th of January, 1904, the facts showing that the following payments were made upon the notes: October 25, 1897, $49.50; October, 1898, $48.68; November, 1899, $33; November 17, 1900, $58.81; August, 1901, $254.71.

"The appellee contended that he had fully paid off the notes. The appellee is an old negro, uneducated, and relied upon appellant to keep an account of the payments. The court held that the appellant was not entitled to rescind the sale, and held that the sequestration was wrongfully sued out. The court gave judgment in favor of appellant for the balance due upon the notes, with interest, and 10 per cent. on the amount as attorney's fees. He found $375 rents in favor of appellee for the time appellant had been in possession of the land by virtue of the sequestration, and $25 for timber cut and removed by appellant from the land while he has been in possession. The court found that there was due appellant, after deducting the rents and values of timber, the sum of $456.94, for which he rendered judgment in favor of appellant foreclosing his vendor's lien."

In further passing on this case on appeal the court said:

"Did the trial court err in refusing to rescind the contract and give judgment for plaintiff for the land? The contract was executory. Upon default by the vendee in an executory contract to convey land the vendor has the right to rescind the sale and to the immediate possession of the land. Where part of the consideration has been paid, the right to rescind may be defeated by showing that there has been too long a delay in insisting on the payment of the purchase money as it falls due and in treating the contract as still existing. * * * The facts show in this case that the appellee Brown continued paying on the notes up to August, 1901, at which time he paid $254.71; that in his opinion this paid the notes in full; that he relied upon appellant to keep an account of the payments and the time of payment. The parties kept figuring on the balance due upon the notes, in the language of the witness, up to the time of filing this suit. Appellee arranged with Mr. Connor to pay the balance due on the notes, and when appellee made this fact known to the appellant he stated: 'I don't want the money. If I had it I would spend it.' These facts show that the appellant treated the contract as subsisting up to the institution of this suit, 7 years from the time of the maturity of the first note given in payment of the land. During that time not a suggestion was made by appellant in reference to a rescission. The appellee, while he had possession of the land, made permanent improvements thereon equal in value to the rents. By reason of the improvements made by the appellee upon the land it is worth from $10 to $12 per acre. The trial court held that appellant was not entitled to a rescission. The authorities sustain this holding. Burkitt v. McDonald, 26 Tex. Civ. App. 426, 64 S. W. 694; Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290; Tom and Wife v. Wollhoefer, 61 Tex. 281."

The note sued on in the instant case was only $83, and credits are admitted to the extent of $141.95, and it seems to have been admitted that the three notes first due were paid in full, although the appellant had not canceled either of them, or delivered them to appellee, and the note was expressly extended three times, each time some years after appellee had defaulted, appellant accepted payments, and then from the date of the last credit shown on the note, appellant still waited for more than 13 years before filing his suit, in the meantime permitting appellee to make use of and improve the land as his home, and to otherwise exercise acts of ownership over it, without the slightest opposition from appellant, and without any insistence by appellant that appellee pay him the balance now alleged to be due.

[4] We think the circumstances in this case are heavy that the debt has been paid, and that the notes being barred by limitation, the right to rescind the contract should not be permitted, and appellant be allowed to recover the land.

While the testimony was not admitted as to the payment of the note, though in our opinion it was admissible, still the circumstances surrounding this transaction, and the fact that the testimony is far from conclusive that there is any balance due appellant, would go far to explain the reason that such a long time was permitted to elapse before insistence on the payment.

[5] We believe that the appellee is correct in his conclusion that when the Legislature in 1913 "passed the act which provides a method for extending notes secured by vendor's lien and deeds of trust, and also fixed a limitation period for the enforcement of such liens, it gave clear recognition to the practice and rules established by the authorities." By the terms of chapter 27, Acts of First Called Session of Thirty-Third Legislature, the owner of vendor's lien notes reserved in a deed executed prior to July 14, 1905, and which are more than 4 years past due when the act took effect, shall have 12 months after the act takes effect to obtain an extension of the notes, "or bring suit to enforce the lien securing them, if same are valid obligations when this act takes effect." (Italics ours.) And, further the act provides that the owners of vendor's lien notes reserved in deeds executed subsequent to July 14, 1905, shall have 4 years after the act takes effect to obtain an extension of the notes, "or bring suit to enforce the lien securing them, if same are valid obligations and not already barred by the four years' statutes of limitations when this act takes effect." The act further provides that the owner of the superior title "to land retained in any deed of conveyance * * * shall have 12 months after this act takes effect within which to bring suit for the land, if their claim

to the land is not otherwise invalid." In the light of this record we are of opinion that there is no merit in the assignment.

The assignments are overruled.

[6] By the fifth assignment of error, appellant says that the present statutes of Texas, which undertake to stipulate a time within which suit to recover land should be brought when the superior title remains in the vendor, are unconstitutional and violative of vested rights; hence the court erred in rendering judgment for defendant. It would serve no useful purpose for this court to go into an extended discussion as to the constitutionality of this law, and without going into details as to the reasons, pro or con, why it may or may not be constitutional, we hold that the said sections of said act are constitutional, and overrule the assignment.

We have carefully gone over and considered the entire record. As said by an eminent judge, in passing upon a case in this state very similar to the one in question, we believe that the judgment of the court below is manifestly correct, and that it meets the equities of the case.

Therefore, the judgment of the lower court is, in all things, affirmed.