TURNER et al. v. GREGORY.    (No. 6003.)

(Court of Civil Appeals of Texas.   San Antonio.   April 17, 1918.   Rehearing Denied May 22, 1918.)

1. MORTGAGES ⊙⟶319(3) — PAYMENT — EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain judgment for cancellation of deed of trust securing note on the ground that the note was paid either to the bank which owned it or to the agent of the bank authorized to receive payment.

2. MORTGAGES ⊙⟶345—LIMITATIONS—POWERS OF SALE.

Where note secured by trust deed with power of sale matured in July, 1908, the right to a sale was barred after July, 1912, in view of Rev. St. 1911, art. 5693, providing that no power of sale under trust deed can be enforced after four years from the maturity of the indebtedness, such statute having been passed in 1911, so that the holder of the trust deed had a reasonable time after its enactment in which to exercise the power of sale.

3. CONSTTUTIONAL LAW ⊙⟶107—LIMITATIONS —POWERS OF SALE.

Rights of grantee of trust deed to exercise power of sale having become completely barred under Rev. St. 1911, art. 5693, four years after the debt matured, and before enactment of article 5695, such article, providing for extension of time to exercise the power of sale, did not extend his time; the rights of the grantor in the bar having become vested.

Appeal from District Court, Jim Wells County; V. W. Taylor, Judge.

Suit by William Gregory against D. McN. Turner and others. Judgment after trial without jury for plaintiff, and defendants appeal. Affirmed.

Henry M. Holden, of Corpus Christi, for appellants. G. R. Scott and Boone & Pope, all of Corpus Christi, for appellee.

SWEARINGEN, J. This suit was instituted by Wm. Gregory, the appellee, against Clark Pease and D. McNeil Turner, appellants, for the purpose of having canceled a certain deed of trust. Several vendees and lien claimants, whose claims arose subsequent to the record of the deed of trust were parties to the suit. The execution of the deed of trust and its record were admitted. The right of cancellation alleged by appellee was that the note secured by the deed of trust had been paid in full, and that, if not, the right to recover on the notes as well as the right to exercise the power of sale contained in the deed of trust was barred by the statute. The cause was submitted to the court without the intervention of a jury, and judgment rendered in favor of appellee on the issue between him and appellants.

No complaint is made by assignment of any part of the judgment except the cancellation of the aforementioned deed of trust. The pleadings clearly and fully presented the issue that the note had been paid and the alternative issue that, if not, the note and remedy given in the deed of trust were both barred by the statute.

The facts are undisputed, except as to payment, and on the question of payment there is a conflict in the testimony. This testimony will be stated in our consideration of the assignment. The question of limitation is determined by a construction of articles 5693 and 5695, Rev. Stats. Tex., and application thereof to the undisputed dates of the

note and deed of trust forming the foundation of this cause.

All of the six assignments present the general proposition that the court erred in rendering the judgment canceling the note and deed of trust for the reasons that there is no evidence of payment, and the power of sale contracted in the deed of trust is not barred. It is admitted that the judgment of the trial court cannot be disturbed if there is evidence that the note was paid or if the power of sale was barred at the time of the judgment.

We think there is evidence that the note was paid, and we also believe the power to sell, given in the deed of trust, was barred. The testimony to prove payment is not without conflict, and perhaps in every respect is not as direct and conclusive as it might be, but still is sufficient to sustain the trial court's judgment.

Mrs. Julia Spiro and her husband made the note and executed the deed of trust in July, 1907. The note matured in July, 1908. In July, 1910, Mrs. Spiro's attention was called to this note and deed of trust by Mr. McNeil Turner, and she requested her brother-in-law to pay it. The brother-in-law did draw a check for the amount stated by McNeil Turner, after inquiry of the bank to which it was payable by indorsement. This check was delivered to McNeil Turner, or to the bank, by the brother-in-law of Julia Spiro, and was paid. The amount of the check was paid to the brother-in-law by Julia Spiro. The evidence shows that Julia Spiro, the maker of the note, actually paid the amount of the note. But whether or not she paid it to the owner or holder of the note, or an agent of the holder authorized to receive it, is the question that depends somewhat upon circumstances instead of direct testimony.

This latter question may be made to stand out clearer by two questions: First. Was the amount of the note paid to the bank while it was the holder of the note? Second. If the payment was made to D. McNeil Turner, was he the agent of the bank authorized to receive the payment for the bank? There is evidence that will sustain an affirmative answer to both interrogatories.

The testimony relative to the first is substantially the following: The witness George was present with Julia Spiro, Laulom, the brother-in-law, and Turner the last of July, 1910, in Corpus Christi. At that time Turner suggested the payment of the note. Julia Spiro thereupon requested Laulom to pay it for her. Mr. Turner phoned the bank to ascertain the balance due at that time on the note. After the phone conversation between the bank and Turner, Turner wrote out a check payable to the bank for $291.65 in payment of the amount of the note, which check Laulom afterwards, on August 1. 1910. mailed to Turner from Brownsville to Corpus Christi. This check was paid by the

bank on which it was drawn and the canceled check returned to Laulom. It will be recalled that witness George testified that Turner filled in the blank check after a phone conversation with the bank, and made the check payable to the bank. The evidence shows that the note was made payable to Clark Pease, one of the appellants, but that Clark Pease, by his indorsement, made the note payable to the bank of which he was president, and added to the indorsement the words "without recourse on me." We presume the indorsement transferred title to the note to the bank, and that this was done before maturity of the note in July, 1908. The evidence does not show when Clark Pease again became the holder of the note. His testimony conveys the inference that he never again became the owner of it, but merely holds it for the purposes of this suit. It follows that at the time Mrs. Spiro made the payment through her brother-in-law, Laulom, the bank was the owner and holder of the note. Because the bank owned the note at that time is the reason Mr. Turner phoned the bank to ascertain the amount and is the reason Mr. Turner filled out the blank check and made it payable to the bank. Mr. Turner testified that he never received the check for $291.65. It is therefore probable that the check was delivered to the bank in whose favor it was written and which owned the note. There is no evidence that the bank did not receive the payment as above indicated. The only evidence of nonpayment is that of Clark Pease, who testified that he had never been paid the amount of the note nor any part thereof. If we are correct in finding that the bank owned the note prior to its maturity until the time of the filing of this suit, then Clark Pease would not have received any payment on the note, but this does not prove that the payment was not made to the owner of the note at the time of payment in August, 1910. The long delay in demanding payment of the note and in exercising the power of sale is a strong circumstance corroborating the proof of payment to the rightful owner of the note. The note matured in July, 1908, was unpaid in July, 1910. This two years' delay is partially explained by the fact that the land conveyed by the deed of trust was in litigation between Julia Spiro and her sister, Mrs. Laulom, on one side and their father, Wm. Gregory, on the other. This litigation was settled in July, 1910, and at the same time payment of the note was suggested by Mr. Turner. The failure of the bank thereafter to demand payment until suit was brought to cancel the deed of trust, more than six years afterwards, strongly indicates that the payment which Julia Spiro actually made had reached the bank.

There is evidence that Turner was in fact the agent authorized by the bank to make this collection. Mr. Turner represented Mr.

Pease in drawing the note originally and in preparing the deed of trust. He was the agent of Pease in making the loan for which the note and deed of trust were given. He requested the payment of the note in 1910. He telephoned the bank to ascertain the amount of the note in August, 1910. He filled out the check for Laulom and promised to send the canceled note. The transaction of paying the note did not stop there, but Julia Spiro actually made payment of the note in accordance with Turner's directions given to Laulom. The long delay in demanding payment is again a forceful circumstance indicating that Mr. Turner did apply the check to the payment of the note, which is an indication that he had the authority to collect it.

[1] The evidence is sufficient to sustain a finding that the note was either paid to the bank while it owned it, or to Turner who was authorized by the bank to receive it. This finding will sustain the judgment for appellee on the issue of payment, for which reason all the assignments should be overruled.

[2] Again, the judgment should be sustained because the facts show that the power of sale was barred at the time of the trial. By article 5693 of the Statutes of 1911 no power of sale created by any deed of trust could be enforced after the expiration of four years from the maturity of the indebtedness secured thereby. The note matured in July, 1908. Four years after that date was July, 1912. The said article 5693 was passed in 1911; hence appellant had a reasonable time after the enactment of the statute of 1911 in which to exercise his power of sale, about one year. This statute did limit the time in which the remedy, by sale by the trustee, could be exercised by the holder of the note, and after July, 1912, that right ceased.

[3] Article 5695 for the extension of time in which to exercise the power of sale, did not revive the power of sale in this case, because on July 30, 1913, this power was already destroyed by article 5693, and being completely barred at that time, which it was, for it became barred in July 1912, four years after the maturity of the indebtedness in July, 1908, the rights of appellee, given him by article 5693, became vested, and could not be revived.

We therefore are of the opinion that the right to exercise the power of sale was barred at the time of the suit and that the right to foreclose the lien given in the deed of trust could not be enforced; for the extension statute, article 5695, is forbidden by the Constitution to revive the expired lien. Carthey v. Weaver, 193 S. W. 490; Tullos v. Mayfield, 198 S. W. 1073; Key v. Jones, 191 S. W. 736.

All of the six assignments are overruled, and the judgment is affirmed.